654 So.2d 1158 (1995)
Charles P. SCHROPP, Petitioner,
v.
CROWN EUROCARS, INC., etc, et al., Respondents.
No. 83522.
Supreme Court of Florida.
March 16, 1995.
Rehearing Denied May 25, 1995.
Raymond T. Elligett, Jr. and Mark P. Buell of Schropp, Buell & Elligett, P.A., Tampa, for petitioner.
Claude H. Tison, Jr. of Macfarlane, Ausley, Ferguson & McMullen, Tampa, for respondents.
OVERTON, Justice.
We have for review Crown Eurocars, Inc. v. Schropp, 636 So.2d 30 (Fla. 2d DCA 1993). This case involves a dispute between a purchaser of a Mercedes-Benz automobile and an automobile dealer concerning the paint finish on the car. The trial court judgment and district court opinion concern the broad issue of corporate liability for punitive damages.[1]
The record reveals that Charles Schropp purchased a new Mercedes-Benz from Crown Eurocars (Crown) in St. Petersburg. A few days after the sale, Schropp complained to Crown about spots on the finish of the car. His persistent efforts to have Crown remove the spots were unavailing. According to Schropp, during one attempt to correct the defect, a Crown employee allegedly told Schropp by telephone that he was watching a worker buff the car at the dealership as they spoke. Schropp later presented evidence that this statement was untrue and that the car had not been buffed at that service visit. At a later visit, Schropp was *1159 allegedly asked by the Crown sales manager, Robert Cohen, to leave the Mercedes-Benz for a "special process" and inspection by a Mercedes-Benz representative. Schropp, allegedly with the understanding that the inspection was a precondition to having the car exchanged by the dealership, agreed and left the car with Crown for several days. Again not satisfied with the dealership's attempts to remove the spots, and on Crown's refusal to exchange the Mercedes, Schropp brought suit against the dealership and Cohen on multiple counts. Mercedes-Benz repurchased the car and its conduct is not an issue in this proceeding.
After a week-long trial, the jury found for Crown and Cohen on all but one count. The jury found each defendant liable for fraud based on statements made by Cohen concerning Mercedes-Benz's involvement in inspecting the car and authorizing a special process on the finish. The jury awarded $500 in compensatory damages for the time Schropp was wrongfully denied the use of the car. The interrogatory verdict also indicates that the jury found that Crown acted with malice toward Schropp and awarded $200,000 in punitive damages. The jury exonerated Cohen of any charge of malice and, consequently, declined to impose punitive damages for his actions. Crown appealed the verdict to the Second District Court of Appeal.
The Second District Court found sufficient evidence to affirm the compensatory damages award, but reversed the award of punitive damages against Crown. The district court noted that Cohen was the only Crown employee with managerial responsibility with whom Schropp had any contact; it concluded that "the jury's exoneration of Cohen from that higher level of maliciousness in the commission of the fraud, which is required to support an award of punitive damages, precludes the assessment of punitive damages against Crown." Crown, 636 So.2d at 35 (footnote omitted). The court analyzed the "managing agent" theory of liability found in Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla. 1985), and elaborated on in Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985), and found that these cases prohibited punitive damage liability for Crown because Cohen was the only management agent who had contact with Schropp, and the jury, by its verdict, had exonerated Cohen. The district court rejected Schropp's argument that Winn-Dixie announced a new theory of "direct corporate liability" that did not require malicious actions by a managing agent. The district court also analyzed whether Crown was vicariously liable for punitive damages under the theory explained in Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), but determined that the evidence did not support vicarious liability under this theory. The district court then certified the following question as one of great public importance:
IS THERE A DISTINCTION BETWEEN THE PREDICATE NECESSARY TO HOLD A CORPORATION LIABLE FOR PUNITIVE DAMAGES UNDER A THEORY BASED ON BANKERS MULTIPLE LINE INSURANCE COMPANY V. FARISH, 464 So.2d 530 (Fla. 1985) AND UNDER A THEORY BASED ON WINN-DIXIE STORES, INC. V. ROBINSON, 472 So.2d 722 (Fla. 1985)?
Crown, 636 So.2d at 37. We answer the certified question in the negative.
A review of the case law in Florida reveals two methods have been established by which a corporation may be held liable for punitive damages: (1) vicarious liability based on the willful and malicious actions of an employee with a finding of independent negligent conduct by the corporation; or (2) direct liability based on the willful and malicious actions of managing agents of the corporation.

Corporate Vicarious Liability for Punitive Damages
In Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), an employee of Mercury Motors Express lost control of his tractor-trailer rig while acting in the scope of his employment and killed a man. The personal representative of the decedent brought suit against the employer and alleged that it was vicariously liable for the willful and wanton acts of its employee. This Court held that, although a corporate employer could be vicariously liable for punitive damages caused by the willful and wanton *1160 acts of an employee, there must be some independent fault on the part of the corporate employer. Because the plaintiff had failed to allege any independent fault on the part of Mercury Motors Express, we quashed the district court's decision that had approved an award of punitive damages in the trial court. In stating the requisite degree of fault that would subject an employer to vicarious liability for punitive damages, we stated the following rule:
Although the misconduct of the employee, upon which the vicarious liability of the employer for punitive damages is based, must be willful and wanton, it is not necessary that the fault of the employer, independent of his employee's conduct, also be willful and wanton. It is sufficient that the plaintiff allege and prove some fault on the part of the employer which foreseeably contributed to the plaintiff's injury to make him vicariously liable for punitive damages.
Id. at 549. Under this theory, a plaintiff must (a) establish that the conduct of the employee was willful and wanton and (b) establish some fault on the part of a corporate employer in order to support a claim of vicarious liability against the corporate employer for punitive damages. We emphasize that under this theory it is not necessary for the plaintiff to establish that the corporate employer acted with the same heightened culpability as the employee to allow punitive damages. It is sufficient if the plaintiff establishes ordinary negligence on the part of the corporate employer.

Corporate Direct Liability for Punitive Damages
In Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530, 533 (Fla. 1985), we discussed the second basis for corporate punitive damages liability, direct corporate liability, and expressly distinguished the vicarious liability theory set forth in Mercury Motors. In Bankers, the president of an insurance company, together with another managing officer of the insurer, encouraged a client of Farish to discharge Farish as the client's attorney and seek other counsel. The attorney sued the insurance company as well as the president of the insurer in his individual capacity. The jury returned a verdict in favor of the attorney against the insurer, including both compensatory and punitive damages, but found in favor of the president of the insurer and refused to award damages for his personal actions. This Court approved the award of punitive damages against the insurer because of the evidence of culpability on the part of the other corporate managing officer of the insurer apart from the actions of the president. Although we never used the specific terminology, it is apparent that the insurer was liable for punitive damages based on its own direct liability through the actions of its other managing officer and not on the basis of vicarious liability.
Shortly after our decision in Bankers, we again had an occasion to discuss the direct corporate liability theory for punitive damages in Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985). In Winn-Dixie, the plaintiff sued for false imprisonment, malicious prosecution, and conversion when he was falsely detained and accused of shoplifting. The facts established that the plaintiff's detention and arrest were expressly approved by an assistant manager of that store. The trial court granted Winn-Dixie's motion for directed verdict on the issue of punitive damages on the basis that the store could not be held vicariously liable under the rule in Mercury Motors. The district court reversed that ruling, finding liability for punitive damages and concluding that the rule in Mercury Motors was not an issue in the case. We affirmed that portion of the district court's decision and stated:
Most recently in Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla. 1985), we expressly held that Mercury Motors was not intended to apply to situations where the agent primarily causing the imposition of punitive damages was the managing agent or primary owner of the corporation. We also hold that Mercury Motors is not applicable in the present case where the suit was tried on the theory of the direct liability of Winn-Dixie, and the jury, by special verdict, decided that Winn-Dixie should be held directly liable for punitive damages.
*1161 Id. at 724 (emphasis added). It is this statement that led to the certification of the district court's question in this case. According to Schropp, the first sentence in this quote acknowledges the managing agent theory of corporate liability for punitive damages and distinguishes the theory from the vicarious liability rule found in Mercury Motors. Schropp then asserts that, because the next sentence begins with the words "we also hold," a new theory of direct corporate liability distinct from the managing agent and vicarious liability theories was established by that decision. Under this new theory, Schropp asserts that there is no requirement that the jury find punitive behavior on the part of a managing agent.
In both Bankers and Winn-Dixie, a managing agent of the defendant corporation had acted in a manner that subjected the corporation to liability for punitive damages. In Bankers, we held that liability for punitive damages rested on the actions of an officer of the defendant corporation. In Winn-Dixie, we omitted a detailed recitation of the facts of the case in part because the facts had been set out fully in the opinion of the district court. The district court's opinion in Winn-Dixie noted that an assistant store manager expressly approved the torts committed against the plaintiff. See Robinson v. Winn-Dixie Stores, Inc., 447 So.2d 1003, 1004 (Fla. 4th DCA 1984). The acts of the store manager provided the jury with sufficient evidence of misconduct sufficient for direct liability under the Bankers managing-agent rule.
We reject Schropp's contention that there is a third theory of general punitive damages liability for a corporate employer. A corporation can act only through its agents. See Sunrise Olds-Toyota, Inc. v. Monroe, 476 So.2d 240, 240-41 (Fla. 5th DCA 1985) ("Any intentional conduct attributed to a corporation must be committed by an officer, agent, or employee of the corporation."), disapproved on other grounds, Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987). If that person is a managing agent or holds a policy-making position, liability for punitive damages is available pursuant to the principles set forth in Bankers;[2] if that person is an employee, liability for punitive damages may be predicated on proof of facts that satisfy the independent negligence rule in Mercury Motors. We decline to extend corporate liability for punitive damages beyond the theories announced in these two circumstances.
Schropp also asserts that, in the event this Court declines to find a distinct direct corporate theory of liability for punitive damages, sufficient evidence was presented to the jury from which it could have found Crown liable under the managing agent theory. Schropp suggests that he presented evidence that Crown's managing agents, including the service manager, provided the requisite willful and wanton misconduct from which Cohen was exonerated, and that corporate liability for the punitive damages award could be predicated on the acts of these agents. We note that the district court in this case characterized Cohen as "the only person who could possibly be responsible as a managing agent for the claims in Count VI." Crown, 636 So.2d at 35. The district court correctly states that Cohen is the only managing agent alleged anywhere in the entire complaint to have committed any post-sale fraud against Schropp. Since the jury exonerated Cohen from Schropp's allegation of willful and wanton misconduct, we agree with the district court that the jury was left with no legal basis on which to impose punitive damages against Crown based on a managing agent theory.
For the reasons expressed, we answer the certified question in the negative and approve the decision of the district court in the instant case.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs specially with an opinion, in which SHAW, KOGAN and ANSTEAD, JJ., concur.
*1162 WELLS, Justice, specially concurring.
I concur with the decision of the majority. However, my view is that punitive damages can be recovered against a corporation on the basis that the corporate policy of the corporation provides a basis for the punitive damages even though the particular officers or agents of the corporation responsible for that policy are not discovered or identified. This is the kind of corporate liability for punitive damages which has been assessed in asbestos cases such as W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla. 1994). I am concerned that the majority's opinion could be construed to the contrary on this point. A construction of the opinion which avoids punitive damages in cases in which the punitive damages are based upon acts performed in furtherance of what is determined to be corporate policy simply because the individual officer or agent responsible for the policy is not discovered or identified is not in accord with my construction of the law.
SHAW, KOGAN and ANSTEAD, JJ., concur.
NOTES
[1] The district court certified that the issue set forth later in this opinion involved a question of great public importance. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
[2] For example, corporate punitive damages liability in asbestos cases is predicated on the conduct of managing agents and corporate policy-making officers.